**COUNTRYSIDE CASUALTY COMPANY, Appellee,**

v.

**Johnny R. ORR and M. L. Kennedy, Appellants.**

No. 74–1928.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1975.

Decided Oct. 14, 1975.

Donald E. Prevallet, Blytheville, Ark., for appellants.

Elbert S. Johnson, Blytheville, Ark., for appellee.

Before LAY, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Johnny R. Orr and M. L. Kennedy appeal from the judgment of the District Court cancelling, *ab initio,* an automobile liability insurance policy issued to Orr by Countryside Casualty Company. The cancellation was based upon material misrepresentations found to have been made by Orr at the time he applied for the insurance policy.

On June 15, 1972, Orr applied for a policy of automobile insurance at a Jonesboro, Arkansas, agency of the MFA Mutual Insurance Company. Among the questions the application asked of Orr were:

5. During the past 5 years, has any driver, applicant or member of the household:

\* \* \* \* \* \*

(d) Been arrested for any offense other than traffic violation?

(e) Been fined or convicted for a moving traffic violation?

(f) had any license or permit to drive or the registration of any automobile suspended, revoked or refused?

\* \* \* \* \* \*

6. Does any driver:

\* \* \* \* \* \*

(b) Use alcoholic beverages?

\* \* \* \* \* \*

He answered "no" to each of these questions. In addition, his signed application contained his representation that it was made "on the basis of the statements and answers to questions made on this application" and that "such statements and answers to questions are true." In fact, Orr had a long list of traffic violations and other arrests and convictions involving "hot checks", forging and uttering, and public drunkenness.

On the basis of the application, a policy of automobile insurance was issued to Orr by Countryside Casualty Company, a subsidiary of MFA Mutual Insurance Company. On July 19, 1972, a small

claim was made under the policy. It was paid without protest. On August 7, 1972, following the company's receipt of a report from the State of Arkansas indicating that Orr had one prior traffic conviction, the company took steps to raise his premium by $20.02, although appellants contend that no notice of increase was ever delivered.

On the evening of August 7, 1972, Orr's automobile was involved in an accident in which one person was killed and two others were seriously injured. Orr was in the back seat of the car at the time of the accident; appellant M. L. Kennedy was the driver.

An investigation following the accident revealed Orr's true record. Thereafter, on September 1, 1972, Countryside Casualty notified Orr that because he had misrepresented his past on the application for automobile insurance the accident would not be covered and his policy would be deemed void *ab initio*. The premium paid by Orr was returned.

When a suit was filed against Orr and Kennedy, Countryside Casualty agreed to undertake the defense of the suit on the condition that none of its rights to avoid liability on the policy would be waived by such action. Later, on April 11, 1973, Countryside Casualty brought a declaratory judgment action against Orr, seeking to have Orr's policy of automobile insurance declared void because of the misrepresentations made by Orr in his application for insurance and to be relieved of all obligations that might arise out of the August 7, 1972 accident. Jurisdiction was based upon diversity of citizenship.[1]

Following a trial to the court, the District Judge[2] found that Orr had misrepresented his traffic and criminal record in the application for automobile insurance and that Countryside Casualty had no knowledge of the true facts prior to August 7, 1972, the date of the accident. Finding that the misrepresentations were material to the risk and that Countryside Casualty relied upon them, the District Court declared the policy void *ab initio* and released Countryside Casualty from all obligations under the policy. This appeal followed.

■ Orr argues that (1) because he submitted his application to MFA Mutual Insurance Company, Countryside Casualty became a mere volunteer when it issued the policy in question and cannot be heard to complain about misrepresentations in an insurance application not filed with it; (2) Countryside Casualty should be estopped from denying coverage under the policy because it knew of Orr's record; and (3) Countryside Casualty should not be able to avoid its liability under the terms of the policy because there was no causal connection between Orr's misrepresentations and the loss.[3]

■ Under the common law, a material misrepresentation made on an application for an insurance policy and relied upon by the insurance company will void the policy. *See* 12 J. Appleman, Insurance Law and Practice §§ 7293–97 (1943). Arkansas, in the absence of statutory provisions to the contrary, follows the general common law rule. *See, e. g.,* *MFA Mutual Insurance Co. v. Dixon,* 243 F.Supp. 806 (W.D.Ark.1965); *Motors Insurance Corp. v. Tinkle,* 253 Ark. 620, 488 S.W.2d 23 (1972); *Aetna Life Insurance Co. v. Mahaffy,* 215 Ark. 892, 896, 224 S.W.2d 21, 24 (1949). We apply this

---

1. Plaintiff is a Missouri corporation; defendants are Arkansas residents; the amount in controversy exceeds $10,000. *See* 28 U.S.C. § 1332.

2. The Honorable G. Thomas Eisele, United States District Court for the Eastern District of Arkansas.

3. Appellant also complains about irregularities in the discovery process below. However, Orr made no motion to compel discovery pursuant to Fed.R.Civ.P. 37 and he made no motion for a mistrial or for a continuance. The sanctions found in Fed.R.Civ.P. 37 are the only relief available for failure to make discovery. *See* *Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers,* 357 U.S. 197, 206–08, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958); *Independent Productions Corp. v. Loew's, Inc.,* 283 F.2d 730, 733 (2d Cir. 1960).

general rule in dealing with appellants' contentions.

## I.

The application form was used both by MFA Mutual Insurance Company and its subsidiary, Countryside Casualty Company. Although the agent inserted the rates applicable to a Countryside policy, she mistakenly checked the box indicating the application was for a MFA policy. This clerical mistake was corrected at the home office in Columbia, Missouri. Appellants contend that as a result of this error Countryside became a mere volunteer when it issued its policy and therefore cannot rely upon the misrepresentations as a defense. The District Court was not impressed by this argument and neither are we. The generally accepted rule is that the maker of a fraudulent misrepresentation is liable to those he intends to influence and to those he has reason to expect to act in reliance upon the misrepresentation. *See* Restatement of Torts (Second), Explanatory Notes § 531, at 95–103 (Tent. Draft No. 10, 1964). *See also Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527, 547–48 (D.C. Cir. 1975); *Carvill v. Jacks,* 43 Ark. 454, 462 (1884). Orr had reason to expect that Countryside Casualty would rely upon his representations. Orr made the representations with the expectation that they would form the basis of a decision by an insurance company to insure him. Orr cannot claim protection under the policy and at the same time disclaim the representations which formed the basis for the issuance of the Countryside Casualty policy, which he accepted.

## II.

Judge Eisele found that Countryside Casualty Company had no knowledge of Orr's complete record prior to August 7, 1972, the date of the accident. However, Orr takes exception to this finding, citing two factual points: (1) he had previously been involved in an accident with one of MFA's adjusters, and (2) he had been insured with MFA previously, on a policy that was issued in his wife's maiden name. These facts, he contends, should have been discovered by Countryside Casualty in its investigation of Orr before it issued the policy.

This argument is without merit. In *MFA Mutual Insurance Co. v. Dixon, supra,* 243 F.Supp. at 815, the court said:

> The court has been unable to discover any affirmative duty in Arkansas upon an insurance carrier to make an independent investigation to ascertain the truthfulness of the facts as set forth in an insured's application.

*See also* Restatement of Torts § 540 (1938); *Fausett & Co. v. Bullard,* 217 Ark. 176, 179–80, 229 S.W.2d 490, 492 (1950). Judge Eisele found that Countryside Casualty Company had no prior knowledge of Orr's record. We find nothing in our review of the record which would justify the conclusion that this finding was clearly erroneous. Fed. R.Civ.P. 52(a).

## III.

Orr contends that because he was not driving his car at the time of the accident the company should not be able to avoid liability for the accident. He argues that his misrepresentations bore no causal relation to the loss.

The only Arkansas case holding that a causal connection is necessary between a misrepresentation in an application for insurance and the ultimate loss before the policy can be voided is *National Old Line Insurance Co. v. People,* 256 Ark. 137, 506 S.W.2d 128 (1974). The court held that where a person had misrepresented the state of his health when applying for a credit life insurance policy upon his own life and later died on account of a cause not related to the misrepresentation, the company was not entitled to void the contract of insurance

under Ark.Stat.Ann. § 66–3208.[4] The court said:

It is our conclusion that, under the Code, the insurer must show a causal relation between the applicant's misrepresentation and the eventual loss.

256 Ark. at 141, 506 S.W.2d at 130.

*National Old Line* is a life insurance case decided under the provisions of a statute expressly relating to life and disability insurance.[5] The court did not rely upon common law, holding instead that:

The Insurance Code . . . was a comprehensive revision of our law in that field and is to be interpreted according to the usual principles of statutory construction.

256 Ark. at 141, 506 S.W.2d at 130.

We think there are significant differences between life, disability, and accident insurance on the one hand, and property damage and personal injury liability insurance on the other. In the former, the risk is more apt to be measured in terms of physical propensities of the insured. The condition of an insured's legs, for example, may bear very little relationship to the risk of death by heart attack or injury by a falling object. Liability insurance, on the other hand, must take into account the negligence factor. The arrest and driving history of an insurance applicant may have no direct causal relationship to a subsequent injury to another person or his property, but, in actuarial terms, such prior conduct provides some measurable indication of the likelihood that the applicant will be associated in the future with activity or conduct which will expose the insurer to a greater risk of loss. This is no less true in evaluating the risk that the applicant will be more or less likely to permit negligence-prone friends to use his vehicle.

▪ These differences are sufficient, we think, to warrant the conclusion that the Supreme Court of Arkansas would not extend to liability coverage the causal relationship requirement which it now applies to § 66–3208 in life insurance and disability cases.[6]

---

4. Ark.Stat.Ann. § 66–3208 provides:

66–3208. *Representations in applications.* —(1) All statements in any application for a life or disability insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount or at the same premium or rate, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

(2) If, in any action to rescind any policy or contract or to recover thereon, any misrepresentation with respect to a medical impairment is proved by the insurer, and the insured or any other person having or claiming a right under the contract, shall prevent full disclosure and proof of the nature of the medical impairment, the misrepresentation shall be presumed to have been material. [Acts 1959, No. 148, § 275, p. 418.]

5. In *Old Republic Insurance Co. v. Alexander*, 245 Ark. 1029, 436 S.W.2d 829 (1969), the Arkansas Supreme Court upheld the findings of the chancellor that the misrepresentations were not material to the risk under an accident insurance policy, a type policy not expressly covered by § 66–3208. In a separate concurring opinion, Justice Smith relied upon § 66–3208 to argue that the insurance company must in addition show a causal connection between the misrepresentation and the loss. In a subsequent case, *Motors Insurance Corp. v. Tinkle*, 253 Ark. 620, 625 n. 5, 488 S.W.2d 23, 27 n. 5 (1972), the trial court upheld coverage under a property damage policy because the misrepresentation was not material to the risk. The Arkansas Supreme Court affirmed, but at the same time declined appellant's invitation to apply § 66–3208 to property damage policies.

6. We have previously declared that "[t]he responsibility of the federal courts, in matters of local law, is not to formulate the legal mind of the state, but merely to ascertain and apply it." *Yoder v. Nu-Enamel Corp.*, 117 F.2d 488, 489 (8th Cir. 1941).

The materiality of the misrepresentation at common law goes to whether or not the insurer, with knowledge of the true facts, would have accepted the risk and issued the policy. 12 J. Appleman, Insurance Law and Practice § 7294 (1943).[7] In this case both Gary Wike, Underwriting Supervisor for Countryside Casualty Company, and agent Betty Handley Treadway testified that agents for Countryside Casualty do not have authority to accept applications from persons with prior criminal convictions. The finding of the District Court that the insurance company relied upon the misrepresentations and "would not have issued the policy had it known the true facts that existed at the time" is supported by substantial evidence and is not clearly erroneous. See Fed.R.Civ.P. 52(a).

The judgment of the District Court cancelling the insurance policy and declaring it void *ab initio* is affirmed.

7. The general common law of misrepresentations in applications for automobile insurance is discussed in 7 D. Blashfield, Automobile Law and Practice § 301.1 *et seq.* (3d ed. 1966).